UNITED STATES of America,
Plaintiff-Appellee,

v.

Ruben Hernandez JIMENEZ,
Defendant-Appellant.

No. 73–3282.

United States Court of Appeals,
Fifth Circuit.

June 21, 1974.

John T. Neal, Houston, Tex. (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Mary L. Sinderson, Alvin A. Horne, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

This is an appeal *in forma pauperis* by Ruben Hernandez Jimenez, who stands convicted on Counts One through Five, respectively, of (1) conspiring to distribute heroin,[1] (2) possession with intent to distribute heroin,[2] (3) distribution of heroin,[3] (4) unlawfully carrying a firearm during the commission of the offense of conspiracy to distribute heroin,[4] and (5) unlawfully carrying a firearm during the commission of the offense of possession with intent to distribute heroin.[5]

Also charged in the same indictment were appellant's brother Manuel, Thomas Rizo, Jesse, Jose, Freddie and Lorenzo Cevallos. Manuel, Jesse and Lorenzo entered pleas of guilty as to Count One. The indictment was dismissed as to Jose, Freddie and Lorenzo.

The principal facts and circumstances upon which appellant's conviction was predicated may be briefly summarized as follows:

Thomas Rizo had become acquainted with Frank De Carlo, an undercover agent of the Bureau of Narcotics and Dangerous Drugs, and in mid-September 1972, called him and began negotiations for the sale of five pounds of heroin at $650 per ounce. Jesse Cevallos, appellant's cousin, was a party to the negotiations. During the following thirty days there were numerous conversations between De Carlo and Jesse and in one on October 16th Jesse told De Carlo that he had two cousins arriving in town. The name "Manuel" was mentioned. In that call it was agreed that the price would be increased to $700 per ounce. Approximately an hour later Jesse again called De Carlo and informed him that the price had been raised to $750 per ounce. He explained that Manuel and "Ruben" had disagreed as to the price, and that the increase was due to De Carlo's insistence on delivery in Houston rather than in Dallas. The next day Jesse and Rizo gave De Carlo a sample of heroin and the sale was agreed to with delivery to be made on the 18th. On that date Rizo and Jesse made arrangements with De Carlo for delivery at the Holiday Inn, near the Houston airport. During the afternoon Rizo and Jesse arrived at the Inn, parked and went into the motel. About ten minutes later Lorenzo and Jose arrived in an Olds. Manuel, accompanied by Freddie and appellant, followed them in a Mercury. Leaving Manuel and appellant near the Olds Freddie entered the motel where arrangements were made to accept delivery of the heroin. Jesse and Freddie returned to the parking lot and joined appellant and those with him. The six then went to the Mercury. Manuel opened its trunk and removed a blue suitcase containing the heroin. All six men then proceeded to the entrance of the motel. Jesse and Manuel joined De Carlo and Rizo in the lobby, went with them to Room 452 and completed the transaction. Appellant and the others went to the lounge where they were arrested following the arrest of Manuel, Jesse and Lorenzo. Both appellant and Manuel were armed with revolvers.

When the Mercury was searched a small travel suitcase was found in the trunk. It contained several photographs and letters and was claimed by a woman named Connie Perez, who was identified as appellant's girl friend.

Appellant claims that there was: (1) insufficient evidence to sustain his conviction on any of the counts; (2) error of the court in not instructing the jury, *sua sponte* on hearsay testimony linking him with the conspiracy; (3) use of prejudicial testimony of no probative value; and (4) illegal use of evidence that he possessed a gun.

The rules governing the sufficiency of the evidence, direct and circumstantial,

1. Title 21 U.S.C. Sec. 846.

2. Title 21 U.S.C. Sec. 841(a)(1) and Title 18 Sec. 2.

3. *Id.*

4. Title 18 U.S.C. Sec. 924(c)(2).

5. *Id.*

to support a verdict of guilty, and when we will reverse, are well crystallized, and will be only briefly repeated.

In United States v. Warner, 441 F.2d 821 (5 Cir.), cert. den. 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58, we held that on a motion for a judgment of acquittal the test is

"whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. Sanders v. United States, 5 Cir. 1969, 416 F.2d 194, 196; Jones v. United States, 5 Cir. 1968, 391 F.2d 273, 274; Weaver v. United States, 5 Cir. 1967, 374 F.2d 878, 881."

We further held that the test as to sufficiency should apply whether the evidence is direct or circumstantial; that

"[I]n criminal cases based on circumstantial evidence our task is to determine whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. United States v. Andrews, 5 Cir. 1970, 427 F.2d 539, 540; Surrett v. United States, 5 Cir. 1970, 421 F.2d 403, 405."

that the matter of defendant's guilt is for the jury unless we conclude that the jury must necessarily have had a reasonable doubt; and that

"[W]e must accept as established all reasonable inferences that tend to support the action of the jury, and any conflicts in the evidence must be resolved in favor of the jury verdict. Gordon v. United States, 5 Cir. 1971, 438 F.2d 858; United States v. Francisco, 8 Cir. 1969, 410 F.2d 1283, 1288."

We also held that "slight evidence" is all that is required to connect a particular defendant with a conspiracy once the agreement or common scheme of conspiracy is shown.

We recently (United States v. Martinez, 486 F.2d 15 (5 Cir. 1973)) restated the rule announced in Panci v. United States, 256 F.2d 308 (5 Cir.), that mere association, without more, does not suffice to demonstrate knowledge of a conspiracy.

The evidence clearly establishes a conspiracy and we are persuaded that under the applicable standards was sufficient to connect appellant with it.

Appellant rode armed in the load car to the designated area of delivery, stationed himself close to the car while final negotiations for delivery were underway in the nearby motel, witnessed his brother remove the suitcase containing the contraband from the trunk of the car after two of the participants had returned from the motel, and, with the others present at that point, accompanied his brother as he carried the suitcase to the entrance of the motel. From those coordinative activities the jury could have reasonably inferred that appellant acted as an armed guard with the duty of securing the safe delivery of $60,000.00 worth of heroin. That evidence concededly was circumstantial. A conspiracy, however, by its very nature is veiled in secrecy, and its existence is rarely established by direct proof, but "must rest upon inferences drawn from relevant and competent circumstantial evidence—ordinarily, the acts and conduct of the conspirators themselves." United States v. Warner, *supra*. Nevertheless, the case against appellant on the conspiracy count was not entirely circumstantial. According to De Carlo, Jesse Cevallos, one of the principal conspirators, informed him on the sixteenth of October that he had two cousins arriving in town and mentioned the name "Manuel," and in a second discussion an hour later, respecting an increase in the price to be paid for the heroin, further informed him that Manuel and a man named "Ruben" had had a disagreement as to the price. Jesse had two cousins who arrived in town, and their names were Manuel and Ruben.

There were also mysterious movements of the parties that could hardly be attributed to mere coincidence and that lacked reasonable explanation. As an example, Jesse testified that on the morning of the eighteenth he dropped Manuel off at the La Cue Club pool hall on Lawndale and that he did not know that Ruben and his brothers, Jose, Freddie and Lorenzo, were there at the time. No reason was given for leaving Manuel at the pool hall. Both Manuel and Ruben testified that before their meeting there neither had known that the other was in Houston.

Upon all the evidence the jury concluded by its verdict that appellant was guilty beyond a reasonable doubt on all the counts submitted to it. Reasonable minds could well conclude that the evidence was consistent with guilt and inconsistent with the hypothesis of appellant's innocence. Viewing all the evidence in the light most favorable to the Government, we are not disposed to disturb the jury's verdict as to any of the counts on the ground of the insufficiency of the evidence.

Appellant asserts error as to the testimony of De Carlo when he stated that Jesse told him in one conversation that he had two cousins coming to town and in another that Jesse mentioned the name "Ruben." Appellant charges that this is the only testimony linking him to the conspiracy.

■ Once independent evidence is received establishing a conspiracy and de-fendant's connection with it, out-of-court statements by co-conspirators during its furtherance are admissible against him. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; United States v. Nall, 437 F.2d 1177 (5 Cir.).

In this case no objection was made when the hearsay testimony was offered and no instruction was requested concerning it. Appellee contends that hearsay testimony admitted without objection is entitled to full probative effect generally, and not limited to conspiracy alone, as if it were otherwise admissible. In United States v. Shiver, 414 F.2d 461 (5 Cir.), a case not involving a conspiracy, we held that such evidence admitted without objection "is to be given its natural probative effect as if it were in law admissible."

Appellant charges that as to the testimony last referred to the court erred in failing *sua sponte* to give a cautionary charge on the limited use of hearsay testimony at the time it was admitted.

■■ The order of the admission of proof in a conspiracy case is within the discretion of the trial court, and testimony concerning out-of-court statements of co-conspirators *may* be admitted before the existence of the conspiracy is established by independent evidence. The following of such procedure may present hazards. United States v. Apollo, 476 F.2d 156 (5 Cir.). But where, as here, there was no objection to the omission, and the issue was fully covered in the court's oral charge to the jury,[6] appellant's claim of error is without merit.

6. "[I]n determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his facts and statements. He cannot be bound by the acts or declarations of other participants in the conspiracy until it is established beyond a reasonable doubt that a conspiracy existed and that he was one of its members.

"Whenever it appears beyond a reasonable doubt from the evidence in the case that a conspiracy existed and that the defendant was one of the members, then the statements and the acts by any [person], likewise found to be a member may be considered by the jury as evidence in the case as to the defendant found to have been a member, even though the statements and acts may have occurred in the absence and without the knowledge of the defendant, provided such statements and acts were knowingly made and done during the continuance of such conspiracy and in furtherance of some object or purpose of the conspiracy.

"Otherwise, any admission or incriminatory statement made or act done otherside of court or by one person may not be considered as evidence in the case against any person who was not present and heard the statement made, or saw the act done."

■ Appellant claims that the court erred in permitting the prosecution to read in evidence the last paragraph of the five-page statement prepared by De Carlo for the Government, dated October 25, 1972, and reading:

"I have read this statement consisting of five pages and signed it. This statement is true and correct to the best of my knowledge. No threats, force, or promise of reward have been made to me and the statement is freely and voluntarily given."

In the course of the cross-examination appellant's counsel asked De Carlo if he was reading from his report, whether everything he remembered was written in it, and whether he could testify truthfully without having it before him. De Carlo was then cross-examined at length about payments made to him before and after October 18th for services rendered as an undercover agent in the case on trial. He denied receiving any payments prior to the events of October 18th. On re-direct he was requested to look at the last paragraph of the statement and to note that he had stated that he had been "promised no reward." De Carlo then outlined the steps taken in its preparation. He stated that he had made no changes in it and that it represented his recollection of the events that occurred on the 18th. After the quoted part was read to the jury the witness testified that he had not been made any promise of reward when he signed the statement and that he had not asked for any money regarding the case on trial or any other case. The quoted paragraph of the statement does not conflict with De Carlo's testimony from the witness stand.

We held in United States v. Bays, 448 F.2d 977 (5 Cir.), cert. den. 405 U.S. 957, 92 S.Ct. 1186, 31 L.Ed.2d 234 that an exception to the rule that the testimony of a witness may not be bolstered exists where the credibility of the witness is impugned on cross-examination. See Judge Friendly's extended discussion of the exception in United States v. De Sisto, 329 F.2d 929 (2nd Cir.). These cases with many others are cited as supporting authority for the general rule that proof of prior statements of a witness are admissible where he has "in some way, been impeached or his credibility impaired or attacked." 98 C.J.S. Witnesses § 648 Note 61, at 675. The challenge to the court's ruling is not sustainable.

■ For the limited purpose of testing the veracity of appellant and certain of his witnesses, the court admitted a signed list of items dated October 24th contained in the travel case taken from the trunk of the Mercury and later returned to one Connie Perez, who appeared to be a resident of Dallas; and for the same limited purpose it also admitted the contents of an envelope containing photographs, newspaper clippings, letters and other matters taken from the travel case. The court's action is assigned as error.

Jesse Cevallos, Manuel Perez and appellant all denied knowing Connie Perez. Manuel testified that he obtained the heroin in Earlimart, California, and left that point on the 14th of October and drove directly to Houston unaccompanied, arriving on the 17th, and that he did not know that appellant, who resided in Dallas, had also arrived in Houston until he met him at the pool hall on the morning of the 18th. He also specifically denied that he came through Dallas; that he did not tell appellant, whom he had not seen for a year, why he was in Houston; nor did appellant tell him why he was there; that the travel from the pool hall to the Holiday Inn was the first time appellant had been in the Mercury.

The news clippings had the word "Dallas" in them; some of the recently postmarked letters were addressed to Connie Perez in Dallas. In one of the letters purportedly from her brother there was a reference to "Ruben."

There was also a picture of a person resembling appellant.

There was no explanation of the presence of the travel case in the trunk of the Mercury. Its contents were properly for the consideration of the jury in impeachment of the testimony of Manuel that he made a direct trip unaccompanied from California and did not stop in Dallas, and that neither he, Jesse, nor appellant knew Connie Perez, who soon surfaced in Houston to sign the list and claim the contents of the case. In any event the court strictly limited the purpose for which the items were admitted.[7] In view of that fact we find no error.

The several agents were in continuous contact with each other by radio prior to appellant's arrest and exchanged information with respect to the conduct that they observed. One of the agents making the arrest of appellant had just seen the heroin in Room 452 of the motel and had sufficient probable cause for his arrest. The arrest was lawful and the search was pursuant thereto. The evidence that appellant possessed a gun was clearly admissible in proof of Counts IV and V.

We find no error in the court's refusal to declare a mistrial after Count VIII was dismissed upon the Government's failure to prove that appellant had been convicted of an assault with intent to murder in the District Court of Howard County, Texas.

Other alleged errors are asserted, but sketchily treated without supporting authority or appropriate reference to the record. We nevertheless have given them due consideration and find them lacking merit.

We affirm as to all counts.

---

7. "[T]hey [the exhibits] are only to be considered for the purpose of testing the veracity of the testimony of the various witnesses.

"They shall not be considered for the truth of their contents. For example, the letters should not be considered as evidence of the truth of any statements made therein. They can be considered only for the limited purposes of challenging or supporting prior testimony, and you may consider the existence of these items, where they came from, what they purport to be, consider them as to whether or not they are inconsistent with any of the testimony or consistent with or however you may deem it to be within those limitations of any witness who has testified in this case."