UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy Eugene CARDEN, Winfred Eugene
Carden, and Robert Lee Carden,
Defendants-Appellants.

No. 75–3225.

United States Court of Appeals,
Fifth Circuit.

March 24, 1976.

Rehearing Denied April 21, 1976.

Mark B. Polson, Birmingham, Ala. (Court-appointed), for defendants-appellants.

Wayman G. Sherrer, U. S. Atty., George C. Batcheler, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY, Circuit Judge, and MILLER,* Associate Judge.

THORNBERRY, Circuit Judge:

On the night of December 10, 1974, the Enlisted Men's-Enlisted Women's Club at Fort McClellan in Alabama was burglarized. Several coin machines were broken into and two bottles of brandy were taken. As a result of an encounter later that night with a private security guard and local police in the nearby town of Anniston, the Carden brothers— Roy, Winfred, and Robert—were arrested and searched. The evidence that was discovered in the search led to the brothers' conviction for breaking and entering a government building at night with intent to steal[1] and for receiving, concealing, and retaining stolen Government property.[2] The Cardens appeal, protesting that the Anniston search was illegal.

At around 2 o'clock on the morning of December 11, private security guard Phillip Williamson observed several persons "acting suspicious" near an Anniston business that he had been hired to protect. In particular, he saw one person looking into the window of a closed laundry and five minutes later, while parked in his unmarked car with the headlights off, he saw two persons run across the street from a warehouse to join a third. Williamson decided to take action at this point. He switched on his headlights, had his partner turn on a handheld spotlight, and approached the subjects, who were later identified as the Cardens. One of them, Winfred, hid behind a nearby car while the others stopped. Williamson testified that he then emerged from his car with a gun in his hand, and required Winfred to come from behind the car. He stated that he did not order the Cardens to stop but that they did so voluntarily. A call to the Anniston police was relayed at Williamson's request by the Yellow Cab Company, and two officers arrived five to ten minutes later. During that time interval, Williamson holstered his gun and, according to his testimony, told the Cardens that he had no right to hold them and that they were free to go, but that they should wait for the police to arrive if they had nothing to hide.

When the officers did arrive, they consulted with Williamson and his partner and questioned the Cardens as to their reason for being in the area at that time of morning. Finding unpersuasive the brothers' claim that they had been at a poker game and were walking home, the policemen placed them under arrest for violation of the Anniston loitering ordinance.[3] A search of Roy Carden turned up two bottles of brandy and, at Williamson's suggestion, the officers looked around the car where Winfred Carden had attempted to hide. Under the automobile was a sack later found to contain coins, mostly quarters, of a value of $235.03. The Cardens were taken in and, when the military authorities informed Anniston police the next morning of the burglary at the Enlisted Men's-Enlisted Women's Club, this prosecution was underway.

---

* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. See 18 U.S.C. §§ 7, 13 (1970) (adopting state law for crimes on federal property); Ala.Code Tit. 14, § 86 (1959) (breaking and entering at night with intent to steal).

2. 18 U.S.C. § 641 (receiving, concealing and retaining stolen property in excess of $100).

3. § 26.20 of the Anniston ordinances provides as follows:

> Loitering on streets.
> Any person found loitering on the streets or alleys of the city on foot or in or on any vehicle or conveyance whatsoever between the hours of 11:00 P.M. and daylight of the following day who can give no reasonable excuse for his presence at such place at such time shall be guilty of a misdemeanor. (Code 1941, ch. 41, § 57; Ord. No. 534)

■ On appeal, the parties agree that the search of the Cardens was permissible if incident to a valid arrest. But appellants correctly note that arrests for loitering are unusual in two respects. First, similar statutes have been subject to successful constitutional attack on grounds of vagueness and overbreadth. *See, e. g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Powell v. Stone,* 507 F.2d 93 (9 Cir. 1974), *cert. granted* 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975); *United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166 (2 Cir. 1974). Appellants argue that arrests under the Anniston loitering ordinance are necessarily illegal because of the alleged unconstitutionality of the ordinance. Secondly, loitering is a misdemeanor, and warrantless arrests, such as those involved in this case, are legal under Alabama law only when the offense was committed in the presence of the arresting officer.[4] Ala.Code Tit. 15, § 154 (1959). Appellants argue that the private security guard detained the Cardens and that the police in arresting them were acting on the security guard's information and had not seen the offense committed in their presence.

■ Without intimating any opinion on the constitutionality of the Anniston loitering ordinance, we must reject the Cardens' first contention. This Court has held more than once that an arrest made in good faith reliance on a statute not yet declared unconstitutional is valid regardless of the actual constitutionality of the ordinance. *Hamrick v. Wainwright,* 465 F.2d 940 (5 Cir. 1972); *United States v. Kilgen,* 445 F.2d 287 (5 Cir. 1971). *See also Brown v. Illinois,* 422 U.S. 590, 609–610, 95 S.Ct. 2254, 2265–66, 45 L.Ed.2d 416, 431–32 (1975) (Powell and Rehnquist, JJ., concurring in part); *Moffett v. Wainwright,* 512 F.2d 496, 502 n. 6 (5 Cir. 1975). While appellants would be entitled to attack the constitutionality of any convictions under the Anniston ordinance, "there is no bar to the use of evidence of other crimes obtained during incarceration for violation of a law which was valid when the arrest was made." 465 F.2d at 941–42.

We require police officers to keep abreast of the changing contours of criminal and constitutional law as they develop through legislative action and judicial decision. But we have been reluctant to, and will not in this case, also require that they forecast future judicial decisions as to the constitutionality of the statutes under which they must make arrests. There is no evidence whatsoever in the record that the arresting officers did not believe that the Anniston loitering ordinance was constitutionally valid. No judicial decision existed, or now exists so far as we know, to negate that conclusion. Under such circumstances, we must reject the Cardens' attempt to assert the unconstitutionality of the ordinance to invalidate their arrest.

■ The appellants' second argument is less clearly foreclosed by precedent than their first, but is similarly unavailing. The argument essentially is that 1) the Cardens were arrested by the police officers rather than the security guard and that 2) the offense was not committed in the officers' presence. We first note that point 1) of this contention is dubious, as the Cardens themselves contended below. It could easily be concluded that appellants were in fact arrested by the security guard, especially in light of his use of a spotlight and a drawn gun. If so, the arrest would be a citizen's arrest for an offense committed in the citizen's presence. Such an arrest is legal under Alabama law, regardless of whether the offense is a misdemeanor or felony. Ala.Code ,Tit. 15, § 158 (1959). The transfer of the Cardens to police

---

4. We note that the legality of the arrest must be judged by applicable state law standards, even though it is a federal constitutional guarantee which is at issue. *Ker v. California,* 374 U.S. 23, 37, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726, 740 (1963); *Johnson v. United States,* 333 U.S. 10, 15 n. 5, 68 S.Ct. 367, 370, 92 L.Ed. 436, 441 (1948).

custody would then be seen not as another arrest, but as the fulfillment of the citizen's duty under Alabama law to forthwith deliver arrested persons to the custody of law enforcement officers. *See* Ala.Code Tit. 15, § 160 (1959). Thus if the trial court had determined that the appellants were in fact arrested by the private security guard Williamson, it would have followed that the search was incident to a valid arrest.

But even if, as it appears was the case,[5] the trial court deemed the officers to have made the arrest, there is still no basis for appellants' point 2). The offense of loitering is committed when one is on the public streets at certain late hours without a "reasonable excuse." When the officers arrived at the scene in Anniston after 2:00 in the morning, they found the Cardens on the public streets. Though they did consult Williamson, they proceeded to determine *for themselves* whether the Cardens had a reasonable excuse for their presence. It was only after they had evidence, arrived at independently of the information relayed to them, that the Cardens were at that time committing the offense of loitering that the arrest was effected.

Appellants would argue that the offense could not have been committed in the officers' presence because the Cardens were not there at the time of their own volition; instead, they had been stopped against their will by the security guard. But they cannot have it both ways. The Cardens either were or were not free to go. If the former, then they were committing the offense of loitering in the arresting officers' presence. If the latter, then the arrest was in fact made by the private security guard and was, as discussed above, a valid citizen's arrest.

■ Appellants also submit, without argument, the issue of whether the trial

court erred by admitting evidence of a petty larceny conviction of appellant Roy Carden. We believe that this impeachment evidence was admissible since the crime at issue involved dishonesty. *See* Fed.R.Ev. 609; *cf. United States v. Smith,* 420 F.2d 428, 431–32 (5 Cir. 1970); *United States v. Carr,* 135 U.S.App.D.C. 348, 418 F.2d 1184 (1969), *cert. denied,* 396 U.S. 1030, 90 S.Ct. 590, 24 L.Ed.2d 525 (1970). Even if this were error, however, we would be persuaded by the record that it did not constitute grounds for reversal.

Affirmed.

---

**5.** In denying the motion to suppress, the court stated that the officers "reached a conclusion that these people were loitering and probably based on what was said and happened there and decided to hold them on such a charge."