UNITED STATES of America,
Plaintiff-Appellee,

v.

Dr. Luther Lewis ASHLEY, Jr., and John Franklin Roper, Defendants-Appellants.

No. 77–5070.

United States Court of Appeals,
Fifth Circuit.

March 20, 1978.

Rehearing and Rehearing En Banc Denied April 26, 1978.

P. Brantley Davis (Court-appointed), George S. Branch, Atlanta, Ga., for Ashley.

O. Fayrell Furr, Jr., Kermit S. King, Columbia, S. C., for Roper.

Wm. L. Harper, U. S. Atty., Jerome J. Froelich, Jr., Asst. U. S. Atty., Atlanta, Ga., Shirley Baccus-Lobel, Atty., T. George Gilinsky, Sidney M. Glazer, Dept. of Justice, Crim. Div., Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a direct criminal appeal. The appellants, Dr. Luther Ashley and John Roper were convicted under a four count indictment alleging various Hobbs Act violations.[1] The indictment charged that Ashley, Roper, and Loren Ralph Fossum attempted to extort $300,000 from Eastern Airlines. The government contends that Ashley and Fossum, while visiting Atlanta on March 31 and April 1, 1976, sent a letter to Eastern Airlines, via taxicab stating that a bomb had been placed in an Eastern Airlines terminal at a major southeastern airport. The letter stated that if Eastern placed $300,000 in cash in a suitcase identified as belonging to "Timothy Swinton" on its flight from Atlanta to Greenville-Spartanburg, South Carolina, then Eastern would be notified of the location of the bomb in time to prevent its detonation. In response to the letter, Eastern contacted the Federal Bureau of Investigation, filled a brown suitcase with paper forms and a single, marked $100 bill, tagged the suitcase with the name "Timothy Swinton," and loaded the bag on flight 364 to Greenville-

Spartanburg on April 1, 1976. Despite efforts by the FBI to intercept him, Roper picked up the bag at the Greenville-Spartanburg Airport.

The next day Fossum, on his own accord, came to the Greenville office of the FBI and related the details of the conspiracy and implicated Ashley and Roper. On April 3, the FBI arrested Ashley, Roper, and Fossum at Ashley's place of employment. At that time, evidence including the extortion bag and a pair of latex surgical gloves were found in Roper's jeep. At trial Fossum pled guilty to the conspiracy count of the indictment and testified against Ashley and Roper under a grant of immunity.

Ashley and Roper were convicted of each of the four counts charged in the indictment. Ashley was sentenced to ten years' imprisonment on counts 2, 3, and 4, with the sentences to run concurrently. He received a five year suspended sentence on count 1 and was placed on probation for a period of five years upon completion of the prison sentence. Roper was sentenced to five years' imprisonment on each count, with the sentences to run concurrently. The appellants, represented by individual counsel, bring separate points of error. For the reasons stated below, we affirm.

### ASHLEY

#### I.

Ashley argues that the trial judge erroneously refused to allow him to impeach the government's principal witness Fossum by proof of two prior convictions. Before any evidence was presented, the United States Attorney asked the trial judge whether he was going to allow impeachment of Fossum for a state conviction for shoplifting and a conviction under the Federal Youth Correc-

---

1. 18 U.S.C. § 1951. Interference with commerce by threats or violence.
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in further-

 ance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
 (b) [definitions omitted].
 For the specifics of the indictment, see notes 15 to 17, infra.

tions Act, 18 U.S.C. § 5005 et seq.[2] for an underlying Dyer Act violation.

After the trial judge examined Fossum's criminal record, which included a state burglary conviction along with the shoplifting and Federal Corrections Act convictions, he ruled, apparently under Fed.R.Evid. 609(d),[3] "I think you better bring out the prior burglary in Mississippi and this one, and then in view of the general prohibition on youthful acts, I don't think you really need that anyway. You've got . . . two good felonies. I think that's sufficient."[4]

Appellant Ashley contends this on appeal that rule 609(d) referring to juvenile adjudications applies only to findings of delinquency under the Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq., and equivalent state actions and has no application when the conviction is under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq. The government argues that the literal reading of the rule supports the trial judge's view that the rule speaks broadly to all proceedings involving juveniles and youthful offenders.

 This appears to be a question of first impression in this circuit. The Second Circuit in *United States v. Canniff,* 521 F.2d 565, 569 n.2 (2 Cir. 1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976) has said in dictum:

> By way of contrast, a person subject to the federal Youth Corrections Act [18 U.S.C. § 5005–26], is convicted of a crime

and then is eligible for the alternative sentence provided in that Act. *See Guidry v. United States,* 317 F.Supp. 1110 (E.D.La.), *affd.,* 433 F.2d 968 (5th Cir. 1970) [18 U.S.C. § 5010]. The record of this conviction is not kept sealed and it may be used to attack credibility in a later proceeding.

*See also Luck v. United States,* 121 U.S. App.D.C. 151, 348 F.2d 763 (1965). Moreover, in support of Ashley's view, the Notes of the Advisory Committee on Proposed Rules draw a distinction between a conviction of a crime and a finding of the status of delinquency. As was recognized by a district court in this circuit, a conviction under the Federal Youth Corrections Act is a conviction of a crime. *Guidry v. United States,* 317 F.Supp. 1110 (E.D.La.), *aff'd* 433 F.2d 968 (5 Cir. 1970). It is therefore apparent that Ashley's reading of the rule is a correct one and that Fed.R.Evid. 609(d) refers only to a finding of the status of delinquency and does not refer to all proceedings involving youthful offenders.

 In addition, we find that even if the state shoplifting charge was a criminal conviction, the evidence of the conviction is still not admissible under Fed.R.Evid. 609(a)(1) or 609(a)(2).[5] First, we may safely assume that shoplifting is not a crime punishable by death or by imprisonment in excess of one year, therefore 609(a)(1) does not apply. Second, in order to be admissible under 609(a)(2) the conviction must in-

---

2. At oral argument the government's attorney represented to the court that the conviction was, in fact, under the Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq. Since no record was made on this point, we are forced to assume that the conviction was under the Youth Corrections Act.

3. (d) Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The Court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.
Federal Rules of Evidence, Rule 609(d).

4. "This one," of course, refers to the guilty plea in the present case.

5. Fed.R.Evid. 609:
(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

volve "dishonesty or false statement, regardless of the punishment." Ashley contends that the crime of shoplifting involves moral turpitude and accordingly dishonesty. We disagree with this reading of the rule.[6]

As the Conference Committee Notes[7] make clear the phrase "dishonesty and false statement" means

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

Other circuits have explicitly held in accordance with our holding today. *See United States v. Seamster,* 568 F.2d 188 (10 Cir. 1978); *United States v. Ortega,* 561 F.2d 803, 805 (9 Cir. 1977); *United States v. Thompson,* 559 F.2d 552, 554 (9 Cir. 1977); *United States v. Hayes,* 553 F.2d 824, 827 (2 Cir. 1977); *United States v. Smith,* 179 U.S. App.D.C. 162, 176, 551 F.2d 348, 362 (1976); *United States v. Millings,* 175 U.S.App.D.C. 293, 535 F.2d 121 (1976); *Government of Virgin Islands v. Toto,* 529 F.2d 278, 281 (3 Cir. 1976). *See also United States v. Papia,* 560 F.2d 827 (7 Cir. 1977); *contra United States v. Bianco,* 419 F.Supp. 507 (E.D.Pa. 1976), *aff'd* 547 F.2d 1164 (3 Cir. 1977). Our own case of *United States v. Carden,* 529 F.2d 443, 446 (5 Cir. 1976) is not dissimilar. In *Carden* we held, without the aid of argument, that the admission of a conviction for petty larceny was harmless error. Consequently, today we hold, as did the Ninth Circuit in *United States v. Ortega, supra* at 805, that a conviction for shoplifting is not a conviction involving dishonesty or false statement within the meaning of Fed.R.

Evid. 609(a)(2). Therefore, even assuming Ashley's position in regard to Rule 609(d) the evidence of Fossum's shoplifting conviction to impeach is still inadmissible under Rule 609(a)(2).

■ We also hold that the trial judge's refusal to allow impeachment through proof of Fossum's Federal Youth Corrections Act conviction does not merit reversal of Ashley's conviction. We think that it is important to note that Ashley's proposed impeachment is cumulative. As the trial judge correctly noted Fossum could be impeached through proof of two prior convictions. We think that Fossum stood before the jury in the instant case, as a fully impeached witness. To whatever degree human nature allows a jury to infer lack of veracity from proof of criminal conduct, we think that point was reached in the instant case and the impeachment gave the jury adequate information regarding the nature of the witness Fossum. A reversal on this point would exalt form over substance.

We wish to distinguish the present case from those in which the defense was totally precluded from impeaching the government's principal witness. We, of course, would not reach today's result if Ashley had not been allowed to impeach Fossum at all or if Fossum's other conviction had been in the nature of *crimen falsi.*[8]

Moreover, we are persuaded that Ashley's failure to impeach Fossum on his Federal Youth Corrections conviction had no effect on the jury's verdict in view of Ashley's innately unbelievable attempt to give an innocent explanation to the facts of the instant case. Ashley's testimony was that he and Fossum went to Atlanta to recover a sum of money due Ashley from a Mr. Goldstein. Ashley testified that he had been

---

**6.** One pre-federal rules case allowed evidence of shoplifting as a basis for impeachment. *See United States v. Lloyd,* 400 F.2d 414 (6 Cir. 1968).

**7.** H.R.Conf.Rep. No. 93–1597, 93d Cong.2d Sess. 9, reprinted in 1974 U.S.Code Cong. & Admin.News, pp. 7098, 7103.

**8.** In addition to proof of Fossum's conviction for burglary, and extortion, the defense was

allowed wide latitude in attacking Fossum. One witness stated that Fossum had a motive to falsify his testimony because Ashley had once fired Fossum. Fossum's prison record was discussed and one witness testified that Fossum was "totally unbelievable" and yet another witness testified that Fossum was angry with Ashley for not co-signing an automobile loan for him.

dealing with Mr. Goldstein since 1969 and that he had frequently met with and called Mr. Goldstein in Atlanta. Nevertheless, Ashley could not name an individual who positively knew Mr. Goldstein nor could he remember Mr. Goldstein's telephone number even when confronted with his business and residential long distance telephone records. Furthermore, Ashley hired a private investigator who found no evidence of Mr. Goldstein's existence.

The appellant's characterization of this trial as a swearing match between himself and Fossum is wide of the mark. In view of Ashley's inconsistent and vacillating testimony, we have no doubt that the jury would not have been affected by proof of three rather than proof of two felony convictions to impeach Fossum.

## II.

◼ In his next point of error, Dr. Ashley contends that the trial judge did not follow the requirements of Fed.Rule Crim.Proc. 32(c)(3)(B) at the sentence hearing. Rule 32(c)(3)(B) requires the trial judge, if he relies on confidential information in a presentence report, to summarize the factual information contained in the report and allow the defendant an opportunity to comment on the material.[9] Ashley bases his contention on the following colloquy:

THE COURT: All right. Let me ask you, Mr. Ashley, Mr. Daniel [counsel to defendant Ashley], is there any reason why judgment should not be pronounced at this time?

MR. DANIEL: We know of no reason at this time.

THE COURT: Mr. Roper, Mr. King [counsel to defendant Roper]?

MR. KING: None that we know of.

THE COURT: Have each defendant and counsel seen the presentence report with respect to his client? That's, of course, except the recommendation and matters kept confidential.

MR. DANIEL: I've seen about three pages of it, Your Honor.

THE COURT: Mr. King?

MR. KING: Yes, sir.

THE COURT: I will say there is confidential matter which is attached, which is not distributed to counsel.

I assume, with respect to Mr. Roper, the Court has examined it and will not take into consideration matters therein contained.

Ashley contends that the trial judge by stating that he had not relied on the confidential information about Roper, implicitly admitted that he did consider the confidential information as to Ashley. The government points out that another possible inference is that the presentence report contained no confidential information about Ashley.

Since we have no way of knowing which inference is the correct one,[10] we have de-

9. Fed.Rule Crim.Proc. 32(c)(3)(A) and (B):

(3) Disclosure.

(A) Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to

any alleged factual inaccuracy contained in the presentence report.

(B) If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

10. The government urges that a defendant is required under Fed.Rule Crim.Proc. 32(c)(3)(B) to request information relied on by the trial court. A reading of the rule does not support the government's position. The defendant must request access to the presentence report under Fed.Rule Crim.Proc. 32(c)(3)(A), *see*

cided to vacate Ashley's sentence and remand for a determination of this question and resentencing.[11] His conviction is affirmed in all other respects. *See United States v. Woody,* 567 F.2d 1353 (5 Cir. 1978).

### ROPER

#### I.

In his first point Roper contends that he was arrested improperly and therefore the evidence seized at the time of his arrest was inadmissible at this trial.[12] First, Roper contends that the arrest was not supported by probable cause, and second, even if the probable cause existed the arresting officers personally did not have knowledge of the probable cause.

#### A. Probable Cause.

■ The government urges that its decision to arrest was based on Fossum's tip and independent verification of the details of the tip. It is well settled that the adequacy of such a tip and corroborated details is tested by the *Aguilar-Spinelli* line of cases. [*Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).] In *United States v. Squella-Avendano,* 5 Cir., 447 F.2d 575, 579, *cert. denied,* 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971), we said, quoting from *Aguilar v. Texas,* 378 U.S. at 114, 84 S.Ct. 1509:

> [t]o rely on an informant's report to establish probable cause, it must first affirmatively appear that the agents were informed of:
>
> [first] some of the underlying circumstances from which the informant concluded that his information was accurate, and [second] some of the underlying circumstances from which the offi-

cer concluded that the informant . . . was "credible" or his information "reliable."

Under this two prong test, there must be an indication that the informant gathered his information in a reliable manner and the informant must be a credible person or his information must be reliable.

(1) *Basis for Fossum's Information.* We have little difficulty with this prong of the *Aguilar* test. Certainly, Fossum knew of the conspiracy because he was a part of it. Fossum was present when Ashley typed the extortion letter and he heard Dr. Ashley read the letter. Additionally, Fossum delivered the letter to the taxi driver who in turn delivered the letter to Eastern Airways. There is no doubt that Fossum's tip resulted from something more substantial than a casual rumor circulating in the underworld or the defendants' general reputation. *See Spinelli v. United States, supra,* 393 U.S. at 416, 89 S.Ct. 584; *Wooten v. United States,* 380 F.2d 230, 232 (5 Cir.), *cert. denied,* 389 U.S. 942, 88 S.Ct. 302, 19 L.Ed.2d 294 (1967).

(2) *Fossum's Reliability.* Under this prong of the *Aguilar* test, we must determine if there is sufficient information to infer that the informant is a reliable or trustworthy person. While there is always some difficulty in establishing the reliability of a first time informant, *see Thompson v. White,* 406 F.2d 1176 (5 Cir. 1969), we are convinced that in the present case, the government was justified in basing a probable cause determination on Fossum's tip. This is especially so since the FBI and police independently corroborated much of Fossum's story.

■ First, there are parts of Fossum's tip that carry their own indicia of reliability. For example, Fossum's tip was an admis-

---

*United States v. Hodges,* 547 F.2d 951 (5 Cir. 1977), but if the trial judge, while acting under the direction of 32(c)(3)(A) avails himself of the 32(c)(3)(B) exception, he must by the mandatory terms of 32(c)(3)(B) summarize the confidential information relied on by him.

**11.** We note that it would be incongruous for the trial judge to follow the letter of

32(c)(3)(B), Fed.Rule Crim.Proc. as to Roper and yet completely ignore the rule as to Ashley.

**12.** The seized items included the bag sent by Eastern Airlines, an Eastern Airlines timetable for the Greenville-Spartanburg airport, and a piece of paper bearing the notation "Timothy Swinton". The paper was taken from Roper's pocket.

sion against his penal interest. Although an admission against penal interest, without more, is not enough to justify a finding of probable cause, *see United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Chavez,* 482 F.2d 1268, 1271 (5 Cir. 1973), it is apparent that such an admission is one of many cumulating factors to be considered. Moreover, since Fossum volunteered information about his and his co-conspirators' involvement in the extortion attempt, we discount any inference that Fossum was not reliable because he gave information to lessen any pressure on himself.

■ Second, we are convinced that Fossum's reliability is bolstered by the FBI's independently verifying much of his story. On April 2, Fossum went to the Greenville office of the FBI and related in detail the circumstances of the plot. Fossum informed the FBI of his and Ashley's trip to Atlanta, including the fact that Ashley had rented a typewriter, prepared the demand note, telephoned defendant Roper in North Carolina and related to him the content of the note. Furthermore, Fossum told the FBI that he had given the demand note to a taxi driver and that Ashley had later told him that Roper had picked up the bag and the bag had only contained a single hundred dollar bill. The FBI office in Greenville verified that Ashley and Fossum had registered in a hotel in Atlanta and that a long distance call to North Carolina had been made from their room.

Finally, Fossum told the FBI that he, Ashley and Roper were to meet at Dr. Ashley's place of employment the next day. Fossum gave the FBI a general description of Roper and a description of Roper's jeep. Fossum was released and told to go to the meeting as scheduled. After the FBI had established a surveillance, Roper appeared in a jeep matching Fossum's description. As Roper and Ashley were driving away in Roper's jeep, they were arrested and the extortion bag was found in the jeep.

Roper objects to this use of the corroborating details because he contends that the details corroborated are innocent ones and that under *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), they cannot be considered. What this argument misperceives is that the corroborative details do not create probable cause by themselves, but they do corroborate that Fossum is a truth teller under the second prong of *Aguilar.* As mentioned before, there is no doubt that Fossum had a pipeline of information to the scheme, *see United States v. Anderson,* 500 F.2d 1311, 1316 (5 Cir. 1974), the only concern under *Aguilar* is whether Fossum is reliable. We agree that the corroboration of innocent facts does not establish probable cause. But it is important to bear in mind that we are not making an inference of probable cause from these facts—we are inferring Fossum's reliability from the verification of these facts. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Mr. Justice White's concurring opinion in *Spinelli* recognized this crucial distinction that we use today.

> Unquestionably, verification of arrival time, dress, and gait reinforced the honesty of the informant—he had not reported a made-up story. But if what Draper stands for is that the existence of the tenth and critical fact is made sufficiently probable to justify the issuance of a warrant by verifying nine other facts coming from the same source, I have my doubts about that case.
>
> In the first place, the proposition is not that the tenth fact may be logically inferred from the other nine or that the tenth fact is usually found in conjunction with the other nine. No one would suggest that just anyone getting off the 10:30 train dressed as Draper was, with a brisk walk and carrying a zipper bag, should be arrested for carrying narcotics. The thrust of Draper is not that the verified facts have independent significance with respect to proof of the tenth. The argument instead relates to the reliability of the source: because an informant is right about some things, he is

more probably right about other facts, usually the critical, unverified facts.

393 U.S. at 426, 89 S.Ct. at 594 (White, J., concurring). We emphasize that our use of the corroborated information goes only to reinforce the reliability of the informant. *See United States v. Montgomery,* 554 F.2d 754, 756–57 (5 Cir.), *clarified on petition for rehearing,* 558 F.2d 311 (5 Cir. 1977), *cert. denied,* — U.S. —, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977); *United States v. Squella-Avendano, supra* at 582; *Bailey v. United States,* 386 F.2d 1, 3 (5 Cir. 1967).[13]

It is therefore plain to us that considering that Fossum gave an admission against interest, he gave that admission of his own free will, and the FBI corroborated enough details of the tip to conclude that Fossum was a truth teller, we think this prong of *Aguilar* is satisfied.

Next Roper argues that even conceding Fossum's reliability, there is no proof that Ashley was reliable and all the information in the tip concerning Roper came from Ashley and not from the direct knowledge of Fossum. Roper would have us establish the reliability of the declarant as well as the reliability of the informant under the test of *Aguilar. See United States v. Romano,* 482 F.2d 1183, 1189 (5 Cir. 1973). While we see no need to establish such a rule in the present case, we note that even if this were the rule there is sufficient reason to credit Ashley's statement regarding Roper. Ashley's statement about Roper was made to his co-conspirator Fossum. Under the co-conspirator exception to the hearsay rule,[14] *see* Fed.R.Evid.Rule 801(d)(2)(E), Fossum could testify as to what Ashley told him. Certainly, if Fossum could testify in court regarding the statement and that statement is reliable enough for in court use, it is also sufficiently reliable to be used in a probable cause determination.

**B. Personal Knowledge of the Arresting Agents.**

▮ Roper next contends that the agents who actually arrested him did not personally have probable cause. Roper argues that the decision to arrest was made in Atlanta and the actual arrest took place in Greenville, South Carolina. The agent making the arrest testified that he did not make an independent decision to arrest. Roper points to *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) for the proposition that the arresting officer must have personal knowledge of probable cause or be advised of the facts necessary to independently verify probable cause. This is not the rule of *Whiteley. Whiteley* states that if the directing officer does not have probable cause, the government may not bootstrap probable cause from the innocent act of a police officer following an erroneous direction. *See Weeks v. Estelle,* 509 F.2d 760, 764 (5 Cir. 1975).

In *Moreno-Vallejo v. United States,* 414 F.2d 901, 904 (5 Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970), we said, "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest," when there is "some degree of communication between the two." *See also United States v. Nieto,* 510 F.2d 1118 (5 Cir. 1975). Since we have determined that probable cause to arrest did exist, *see* § I A, *supra,* and it is undisputed that a great amount of communication between the United States Attorney's office in Atlanta and the agents in Greenville transpired, we are satisfied with the propriety of this arrest.

**II.**

▮ In his next point, Roper contends that the indictment under which he was

13. "If sufficient corroborative evidence can be collected to support a clear inference that the informer was generally trustworthy, then *Aguilar's* second requirement is met." *United States v. Squella-Avendano, supra* at 582. *See United States v. Drew,* 436 F.2d 529, 533 (5 Cir. 1970), for a case in which the verification was used to bolster the first prong of *Aguilar*—a basis for the informant's tip.

14. Actually considered not hearsay by virtue of the Federal rules. *See* discussion, § III, *infra.*

convicted was multiplicious. Count I of the indictment charged conspiracy under the Hobbs Act.[15] 18 U.S.C. § 1951. *See Callahan v. United States,* 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1967); *United States v. Jacobs,* 451 F.2d 530 (5 Cir. 1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). Counts II and III charged substantive offenses under the Hobbs Act.[16] And Count IV charged the sending of false information in violation of 18 U.S.C. § 35(b).[17]

Under the concurrent sentence doctrine, it is unnecessary to reach a claim of multiplicity when there is no enhanced sentence as a result of the multiple counts and the submission of the multiple counts did not confuse the jury or generate "an adverse psychological effect on the jury." *United States v. Hearod,* 499 F.2d 1003, 1005 (5 Cir. 1974). *See United States v. Carvin,* 555 F.2d 1303 (5 Cir. 1977); *United States v. Brown,* 555 F.2d 407 (5 Cir. 1977); *United States v. Smith,* 550 F.2d 277, 285 (5 Cir. 1977); *United States v. Wertis,* 505 F.2d 683, 685 n. 7 (5 Cir. 1975); *United States v. Rojas,* 502 F.2d 1042, 1045 (5 Cir. 1974); *United States v. Jacobs,* 451 F.2d 530, 534, and cases cited in note 3 (5 Cir. 1971). Since we are persuaded that multiple counts did not "generate an adverse psychological effect on the jury" we elect not to reach the merits of Roper's multiplicity point.

## III.

■ Roper's third argument is that there is insufficient evidence to support his convictions.[18] Since Roper was sentenced to concurrent sentences, we will consider only if there was sufficient evidence to support his conspiracy conviction, see § II, *supra,* and *United States v. Alvarez,* 548 F.2d 542, 544 n. 4 (5 Cir. 1977); *Mishan v. United States,* 345 F.2d 790, 791 (5 Cir. 1965).

■ Roper, relying on *United States v. Apollo,* 476 F.2d 156 (5 Cir. 1973), contends that even assuming the existence of a conspiracy to extort money from Eastern Airlines,[19] there is no evidence linking Roper to

**15.** Count I charges that Ashley, Fossum and Roper, "defendants herein, did obstruct, delay and affect commerce and unlawfully, willingly and knowingly did combine, conspire, confederate, agree, and have a tacit understanding with each other to extort a sum of money from Eastern Airlines and to threaten physical violence to persons and property . . ., in violation of Title 18 U.S.C. 1951."

**16.** Count II charges that Ashley, Fossum and Roper, "Aided and abetted by each other, did obstruct, delay and affect commerce by willfully and unlawfully attempting to extort money from Eastern Airline, in violation of Title 18, United States Code, § 1951."

**17.** Count IV charges that Ashley, Fossum and Roper, "Aided and abetted by each other, did willfully and maliciously impart and convey and caused to be imparted and conveyed cross-information, knowing the information to be false, concerning an attempt . . . to do an act which would be a crime prohibited by Chapter II of Title 18, United States Code . . ., in violation of Title 18, United States Code, § 32, and in violation of Title 18, United States Code, § 35(b)."

**18.** Roper also objects to Fossum's testimony that Ashley had said that Roper had picked up the bag at the airport. Roper contends that once he had picked up the bag at the airport, the curtain dropped on the conspiracy and that statements made after the conspiracy was completed are not admissible under the exception to the conspiracy rule. *See Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). We are of the opinion that the statement was properly admitted. The instant conspiracy was far from over at the time of this statement. The money received, albeit only $100, had to be distributed and the participants in the conspiracy had to satisfy their obligations to one another.

**19.** It is apparent to us that there is ample evidence of the conspiracy. Fossum's direct testimony is clearly sufficient to establish this point. *United States v. Apollo,* 476 F.2d 156, 158 (5 Cir. 1973). In *United States v. Perez,* 489 F.2d 51, 61 (5 Cir.), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1973), Chief Judge Brown wrote for the court:

> [T]he existence of a conspiracy is usually proved in one or more of three ways—by circumstantial evidence, by the testimony of a co-conspirator who has turned state's evidence, or by evidence of out-of-court declarations or acts of a co-conspirator or of the defendant himself.

the conspiracy other than the testimony of Fossum—an admitted co-conspirator.[20]

In *Apollo,* we quoted the following passage from *Montford v. United States,* 200 F.2d 759, 760 (5 Cir. 1952):

> The declarations of one conspirator made in furtherance of the objects of the conspiracy, and during its existence, are admissible against all members of the conspiracy. *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. But a defendant's connection with a conspiracy cannot be established by the extrajudicial declarations of a co-conspirator, made out of the presence of the defendant. There must be proof *aliunde* of the existence of the conspiracy, and of the defendant's connection with it, before such statements become admissible as against a defendant not present when they were made. *Glasser v. United States,* 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680, 701 . . . .

We must disagree with Roper's contention that there was no independent evidence linking him with the conspiracy. It was stipulated at trial that Roper recovered the bag from the Greenville-Spartanburg Airport. At the time of his arrest, Roper was in possession of the bag and was aware of its contents. Furthermore, Roper had on his person at the time of his arrest, a piece of paper with the notation "Timothy Swinton" written on it. This evidence is adequate to cross the co-conspiratorial hearsay barrier of *Apollo* and *Montford.* And once this barrier is crossed, the hearsay testimony of Fossum is clearly sufficient to prove that Roper was a knowing participant in the conspiracy. *United States v. Trevino,* 565 F.2d 1317 (5 Cir. 1978); *United States*

*v. Morgan,* 562 F.2d 1001, 1003 (5 Cir. 1977); *United States v. Iacovetti,* 466 F.2d 1147, 1153 (5 Cir. 1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270.

In a related argument Roper also relies on *Apollo, supra,* for his contention that the trial judge erred by failing to give a limiting instruction after Roper had objected to Fossum's testimony concerning a conversation Ashley had over the telephone with Roper. At trial Roper's attorney made the following objection to the testimony:

> May we register an objection at this point? There is no independent evidence, so far as I know, to connect the defendant Roper to any conspiracy. This witness is now quoting Dr. Ashley, and I object on the grounds of hearsay.

Roper contends that his objection is the equivalent to a request for a limiting instruction and that under *Apollo* it is error for the trial judge to fail to give such an instruction. The government contends that there was no request for an instruction and several cases have explicitly held that the trial judge is under no obligation to give such a limiting instruction *sua sponte. United States v. Leaman,* 5 Cir., 546 F.2d 148, 150 (1977); *United States v. Moore,* 5 Cir., 505 F.2d 620, 624; *United States v. Jiminez,* 5 Cir., 496 F.2d 288, 291, *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975). As we read Roper's objection, it goes totally to the admissibility of the testimony. Since it is well settled that the order of trial is within the discretion of the trial judge,[21] *United States v. Jiminez, supra* at 291; *United States v. Apollo, supra* at 163; *United States v.*

---

**20.** Technically, *Apollo* is a rule of admissibility; but, of course, if there were no independent evidence linking Roper to the conspiracy, Fossum's hearsay testimony would be inadmissible and there would be no evidence to support Roper's conviction.

**21.** Roper does not claim that Rule 104(a), Fed. R.Evid. changes the *Apollo* practice. One circuit, in *United States v. Petrozziello,* 548 F.2d 20 (1 Cir. 1977), has held that Rule 104(a), Fed.R.Evid. requires that the trial judge should determine the existence of a conspiracy before

admitting any of the co-conspirators' hearsay testimony into evidence. Since Roper did not raise this objection at trial, our review would be limited by the plain error standard. In *United States v. Ochoa,* 564 F.2d 1155, 1157 (5 Cir. 1977), this court has determined that the *Apollo* practice survives plain error scrutiny. *See also United States v. Thomas,* 567 F.2d 638 (5th Cir. 1978); *United States v. Tenorio,* 565 F.2d 943 (5 Cir. 1978); *United States v. Brown,* 555 F.2d 407 (5 Cir. 1977).

*Rhodes,* 453 F.2d 598, 600 (5 Cir. 1972), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 there is no error in admitting the testimony. Moreover, the trial judge should not have the additional responsibility of inferring a request for a limiting instruction from this objection.

■ Finally, we believe that even if Roper were entitled to a limiting instruction as a result of his objection, he was not prejudiced by the failure to receive one. Since the existence of a conspiracy was established and we have determined that there was independent evidence linking Roper to the conspiracy, the jury was free to impute the words and actions of the co-conspirators to each other without limitation. Consequently, there was no prejudice from the lack of a limiting instruction. *See United States v. Moore, supra.*

Accordingly, appellant Ashley's conviction is AFFIRMED but his sentence is VACATED and REMANDED, and appellant Roper's conviction is AFFIRMED.