UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert L. HERRING, and Jerry D.
Dorminey, Defendants-Appellants.

No. 78–5654.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1979.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1979.

C. Nathan Davis, Albany, Ga. (court-appointed) for Robert L. Herring.

Peter Zack Geer, Albany, Ga., for Jerry D. Dorminey.

Samuel A. Wilson, Jr., Asst. U. S. Atty., Macon, Ga., for United States.

Before SIMPSON, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Robert L. Herring and Jerry D. Dorminey appeal their convictions for racketeering activity affecting interstate commerce, 18 U.S.C. § 1962(c) (1976),[1] and for interstate transportation of securities procured by fraud, 18 U.S.C. §§ 2, 2314 (1976).[2] They contend that the trial court erred in evidentiary rulings and its charge to the jury; Herring also challenges the sufficiency of the indictment, the refusal of the court to sever his case from Dorminey's, and the quality of his legal representation. After reviewing each of their claims of error, we affirm both convictions.

I

The salient facts in this case embroil the appellants and their companies in a scheme of financing fraud. Herring was the head of Herco Corporation (Herco), a Georgia corporation involved in heavy equipment sales. Dorminey was the head of Dean's Power Oil, Inc. (Dean's Oil), a Georgia corporation involved in the retail sale of gasoline. As part of his business, Herring would obtain financing for heavy equipment sales. This ordinarily involved the sale of the equipment under an installment sale contract, which Herco would discount with a financing company in order to receive directly large sums of money. Herring and Dorminey fraudulently obtained in excess of $1,200,000 from five different financial institutions, supposedly to finance the sale of heavy equipment by Herco to either Dean's Oil, Dorminey personally, or another party.

The heavy equipment that was the subject of these "sales" and that supposedly secured the financing was in fact owned by others in various places from Puerto Rico to Algeria and in one instance was non-existent. Representatives from the financial institutions testified that only because these transactions had been structured as "sales" did the financial institutions not require an independent inspection of the equipment; had they been cast as "loans," an inspection of the collateral would have revealed the absence of the equipment and resulted in no money for Herring and Dorminey. The funds obtained in this manner from the financiers were divided between Herring and Dorminey; Dean's Oil then made payments on the installment sales contracts, at times with funds supplied by Herco.

---

1. 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

2. 18 U.S.C. § 2314 provides in part:

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; . . . [shall be fined and/or imprisoned].

The term "securities" is defined in 18 U.S.C. § 2311 (1976) to include checks.

Herco eventually went into bankruptcy and Dean's Oil filed for a Chapter XI arrangement. At the trial, each defendant attempted to place the blame on the other. Herring, attempting to negate any intent to defraud, contended that he was merely assisting Dorminey, as a favor, to obtain loans on equipment he believed Dorminey owned. Dorminey also denied any intent to defraud; he testified that Herring had told him that Herco owned the equipment serving as the security for the loans and that the transactions were legitimate. The jury was not persuaded by their inculpative defenses and found defendant Herring guilty of seven counts and Dorminey guilty of six counts of interstate transportation of securities procured by fraud under 18 U.S.C. § 2314 and each guilty of one count of racketeering activity under 18 U.S.C. § 1962(c).

## II

On appeal, Herring and Dorminey each challenge the fairness of his trial. We turn to the points of error each has raised.

### A. Sufficiency of the Indictment

Herring contends that the indictment improperly charged a violation in the count brought under 18 U.S.C. § 1962(c) and failed to allege the essential elements of a crime in any of the 18 U.S.C. § 2314 counts. Section 1962(c) makes illegal interstate activities that are conducted through a pattern of racketeering activity. "Racketeering activity" is defined in section 1961 to include violations of certain sections of Title 18 of the United States Code, among them section 2314.[3] In listing these code sections, section 1961 provides explanatory parentheticals for the types of crimes incorporated into the definition of racketeering activity. Drawing on the explanatory parenthetical following the listing of section 2314,

Herring contends the indictment does not charge a violation of 18 U.S.C. § 1962(c).

■ The explanatory parenthetical for section 2314 states "(relating to interstate transportation of stolen property)." See note 3 supra. In this case, however, the section 2314 conduct that allegedly constituted a section 1962(c) pattern of racketeering was not described as interstate transportation of stolen property; rather, the conduct pertained only to securities converted or taken by fraud. The explanatory parenthetical, Herring argues, limits the kind of section 2314 conduct that constitute a pattern of racketeering activity for section 1962(c) purposes to interstate transportation of stolen property. The interstate transportation of securities converted or taken by fraud, as charged in this case, is not included; therefore, Herring submits, the section 1962(c) count fails to allege an offense.

The Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922, was enacted to further the eradication of organized crime. Id. §§ 1, 904. Such a restrictive reading of the statute as that suggested by Herring would undermine the remedial purposes that Congress intended. If Congress had intended to exclude the interstate transportation of property obtained by fraud from its definition in section 1961, it specifically could have limited the incorporation of section 2314 as it did the incorporation of section 659, where only felonious acts under section 659 are included. See note 3 supra. We hold that the reference to the interstate transportation of stolen property in the parenthetical following the citation of section 2314 in the section 1961 definition of racketeering activity was intended merely to aid the identification of section 2314 rather than to limit the proscriptions of that section. Because of this, the indictment properly charged a crime under 18 U.S.C. § 1962(c).

---

**3.** 18 U.S.C. § 1961 (1976) provides in part:
As used in this chapter—
 (1) "Racketeering activity" means . . .
(B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery),

sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, . . . sections 2314 and 2315 (relating to interstate transportation of stolen property), . . . .

 Herring attacks the counts of the indictment based on section 2314 by claiming that they fail to allege the essential elements of a crime. He contends that the lack of the words knowingly, willfully, or unlawfully is a fatal infirmity. We cannot agree. In addressing the requirements of the same part of section 2314 involved here, this court has stated: "To sustain a conviction under this statute it is necessary to prove that the accused transported the goods in interstate or foreign commerce, that the value of the goods so transported was $5,000 or more and that he knew they had either been stolen, converted or taken by fraud." *Johnson v. United States*, 207 F.2d 314, 319 (5th Cir. 1953), *cert. denied*, 347 U.S. 938, 74 S.Ct. 632, 98 L.Ed. 1087 (1954). *See United States v. Franklin*, 586 F.2d 560, 564 (5th Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979). Each count of the indictment in this case alleges that the defendants knew that the checks had been taken by fraud and is sufficient to charge a crime. The authorities cited by Herring are not apposite since they deal with the requirements of different statutes or different subsections of section 2314. Similarly, we cannot accept Herring's contention that the indictment failed to inform him of the nature of the charges against him. Here the indictment sufficiently specified the transactions out of which the charges arose and traced the language of the statutes allegedly violated. *See Grene v. United States*, 360 F.2d 585, 586 (5th Cir.) (per curiam), *cert. denied*, 385 U.S. 978, 87 S.Ct. 522, 17 L.Ed.2d 440 (1966).

## B. *Adequacy of Legal Representation*

 Herring next contends that he was not adequately represented by his re-

tained counsel at trial and thus was denied his right to effective assistance of counsel.[4] This claim stems from the trial court's failure to grant Herring's motion for continuance filed four days prior to trial, in which his counsel stated that he had not had sufficient access to Herring to prepare a defense and thus was unable to provide him effective representation. Herring, however, has not specified one instance at trial where he was not adequately represented. Moreover, the record indicates that Herring's counsel filed numerous pretrial motions and was successful in obtaining a change of venue. The record also reveals that counsel was familiar with the dealings of Herring and Herco, having represented them in business affairs, in Herco's voluntary petition for bankruptcy, and in other civil and criminal actions arising out of the transactions involved in this prosecution. 1st Supp. Record, vol. 4, at 11–17. Herring simply has not carried his burden of proving that his retained counsel was ineffective. *See Marino v. United States*, 600 F.2d 462, 464 (5th Cir. 1979) (per curiam).

## C. *Joint Trial of the Codefendants*

 The trial court did not grant Herring's motion to sever his trial from that of Dorminey, although it did sever one count of the indictment pertaining to bribery.[5] Herring now claims that he was denied his right to a fair trial because of the trial atmosphere in which each defendant attempted to place the blame on the other. Defendants charged in the same indictment for their participation in the same crimes may be tried together; it is only when the trial court determines that a party is prejudiced that a severance should be granted.

---

**4.** After oral argument, Herring informed the court that his retained trial counsel had been indicted along with Herring and others for bankruptcy fraud and alleged that a conflict of interest prevented adequate representation, even though the indictment for bankruptcy fraud was not returned until eight months after the indictment and five months after trial in this case. This question is not properly before this court in this appeal, and we decline to

consider it. *See United States v. Prince*, 456 F.2d 1070 (5th Cir. 1972) (per curiam).

**5.** Defendants Dorminey and Carlton Dixon, an employee of Dean's Oil who was indicted also, were successful in their motion to sever for separate trial a count charging them with bribery of an Internal Revenue Service Agent who was attempting to determine the amount of federal excise taxes owed by Dean's Oil. 1st Supp. Record, vol. 2, at 87.

Fed.R.Crim.P. 13, 14. The trial court's decision to deny a motion for severance will not be disturbed unless a defendant can bear "a heavy burden" of showing prejudice. *United States v. Crockett*, 514 F.2d 64, 70 (5th Cir. 1975). Here the trial court did not abuse its discretion. Because both defendants were involved in the transactions charged in the indictment, a severance would have resulted in the duplicative presentation of basically the same evidence. The attempt by codefendants to rely on conflicting defenses alone is not sufficient to meet the showing of prejudice; the complaining defendant must at least demonstrate that the conflict is so irreconcilable that the jury will infer that both defendants are guilty solely due to the conflict. *United States v. Martinez*, 466 F.2d 679, 687 (5th Cir. 1972), *cert. denied*, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). Herring has not met this burden.

D. *Evidentiary Rulings by the Trial Court*

■ Both Herring and Dorminey claim that the trial court erred in either admitting or excluding certain testimony, much of which was offered by one against the other. One point of alleged error concerns the admission of evidence about similar illicit financial transactions. Over Herring's objection, counsel for Dorminey questioned Herring on cross-examination about installment sale contracts on which Dorminey's name had been forged as purchaser, al-

though they were not the subject of the indictment. Dorminey then proceeded to prove these ficticious installment sales in his case-in-chief. Herring argues that the admission of this evidence denied his right to a fair trial because it was not relevant and had the effect of proving the crimes that the indictment did charge. This argument fails to recognize that evidence of other crimes or acts may be admissible for the purpose of showing intent, plan, or knowledge under Fed.R.Evid. 404(b).[6] The trial court determined that this evidence was relevant before admitting it with a limiting instruction to the jury. 1st Supp. Record, vol. 9, at 647, 788; *id.*, vol. 11, at 1223–24. This limited use of testimony about the similar fictitious installment sale contracts to show Herring's knowledge or intent concerning the crimes charged, especially in light of his defense that he had been drawn into these transactions by Dorminey, was proper. *See United States v. Bryant*, 490 F.2d 1372, 1377 (5th Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974).

■ The trial court also permitted Herring to be impeached by two prior felony convictions for stealing farm tractors.[7] Herring alleges, however, that the court failed to follow the requirements of Fed.R. Evid. 609[8] by not properly weighing the probative value against the prejudicial effect of the convictions. The record fails to support this contention. One of the felony

6. Fed.R.Evid. 404(b) provides:
 *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7. Herring also makes reference in his brief to the admission of a prior conviction for manufacturing non-tax paid liquor. Brief for Appellant Herring at 48 n. 21, 50. We have been unable to find any reference to such a conviction at the trial.

8. Fed.R.Evid. 609 provides in part:
 (a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence

that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.
 (b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date
. . . .

convictions was in 1969, the other in 1970. Since the trial occurred during 1978, neither was excluded by the ten-year limitation of rule 609(b). After examining the conviction documents and discussing the matter with the attorneys in a bench conference, the trial court made a specific finding that the probative value of the convictions substantially outweighed their prejudicial effect and that the convictions were admissible for impeachment purposes. 1st Supp. Record, vol. 8, at 538–39. This was sufficient to meet the rule 609(a)(1) requirements of admissibility.[9] *United States v. Wiggins*, 566 F.2d 944, 946 (5th Cir.) (per curiam), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978). The trial court also correctly instructed the jury on the limited use of the convictions. 1st Supp. Record, vol. 8, at 544.

Dorminey claims that the trial court committed reversible error by not allowing him to cross-examine Ed Miller, a prosecution witness from one of the finance companies, about a Rick Bartholomew and by refusing to call Bartholomew as a court witness. Bartholomew was employed by the same finance company as Miller, and Dorminey wished to elicit testimony supposedly to prove a conspiracy between Bartholomew and Herring concerning the same allegedly forged contracts that Dorminey had used to impeach Herring. Dorminey wished to use this testimony to show a general pattern of deceit in Herring's business dealings and thus support his claim that Herring had misled him. Miller had testified on direct

examination that Dorminey, when initially questioned about the allegedly forged contracts, had not denied involvement. 1st Supp. Record, vol. 10, at 1038. When Dorminey's counsel sought to question Miller about Bartholomew, the prosecutor objected that the inquiry went beyond the scope of direct examination and was sustained. Later, prior to the commencement of Dorminey's defense, the court was requested to call Bartholomew as its witness to allow Dorminey, in a cross-examination posture,[10] to prove that Bartholomew and Herring had arranged the contracts without Dorminey's knowledge. The court refused to call Bartholomew, viewing Dorminey's strategy as an attempt to develop a mere "side issue on intent" that did not concern the contracts charged in the indictment. 1st Supp. Record, vol. 10, at 1107.

Under Fed.R.Evid. 611(b),[11] the trial court normally is to limit cross-examination to matters covered on direct examination, although it is within the judge's discretion to allow a more open cross-examination. *See United States v. Rice*, 550 F.2d 1364, 1371 (5th Cir.), *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977). Similarly, it is within his discretion to call witnesses. *See Steinberg v. United States*, 162 F.2d 120, 124 (5th Cir.), *cert. denied*, 332 U.S. 808, 68 S.Ct. 108, 92 L.Ed. 386 (1947); Fed.R.Evid. 614(a).[12] Considering the collateral nature of the testimony that Dorminey sought to elicit, the trial court did not abuse its discretion in limiting the cross-ex-

---

**9.** Because we hold that the requirements of rule 609(a)(1) were met, we express no opinion as to whether the prior crimes would be automatically admissible under rule 609(a)(2). *Cf. United States v. Carden*, 529 F.2d 443, 446 (5th Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 134, 50 L.Ed.2d 121 (1976) (petty larceny conviction involved dishonesty and was admissible for impeachment).

**10.** Dorminey did not call Bartholomew as his own witness, nor did he make any showing that Bartholomew was a hostile witness who could not be examined adequately without resort to leading questions. Because we find that the trial judge acted well within his discretion in restricting Dorminey's cross-examination of Miller and refusing to call Bartholomew as a court's witness, we need not decide whether

Dorminey waived his right, under the circumstances present, to claim error.

**11.** Fed. Rule Evid. 611(b) provides:

*Scope of cross-examination.*—Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

**12.** Fed.R.Evid. 614(a) provides:

*Calling by court.*—The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

amination of the witness from the finance company or in refusing to call Bartholomew as its own witness.

Dorminey further argues that the trial court committed reversible error by allowing Herring to impeach him through statements he made at the first meeting of the creditors in Dean's Oil's Chapter XI proceedings in violation of the immunity mandated by 11 U.S.C. § 25(a)(10) (1976).[13] At trial, Dorminey testified that he had entered into two of the transactions in the indictment to assist Herring in paying off the contracts on which Dorminey's name had been forged as purchaser. Herring then sought to impeach Dorminey with his prior bankruptcy testimony in which Dorminey had said that he had entered into the two transactions to obtain working capital for Dean's Oil. 1st Supp. Record, vol. 10, at 964–67. After the court asked for the applicable law in the area and none of the parties enlightened it, it allowed the impeachment to proceed over Dorminey's objection. *Id.* at 978–80. The use of this prior bankruptcy testimony was improper.

Section 25(a)(10) compelled Dorminey to testify in the bankruptcy proceedings concerning his financial matters, but provided that the testimony so given could not be offered in evidence against him in any criminal proceeding. See note 13 *supra.* Where testimony has been compelled under the protection of immunity, such testimony should not even be used for impeachment purposes. *See United States v. Moss,* 562 F.2d 155, 163 (2d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978). The only recognized exceptions to this rule involve prosecutions for the commission of perjury at the first meeting of the creditors or for contempt for refusing to testify. These exceptions are necessary to prove the perjury or contempt and to discourage the same; they are inapplicable here. *See* 1A Collier on Bankruptcy ¶ 7.21, at 1022–23 (14th ed. J. Moore & L. King 1978).

Here, however, we find the error harmless. Dorminey admitted signing the documents (in which he or Dean's Oil was identified as the purchaser or lessee) necessary to procure the funds from the financing companies, even though he admittedly had no use for and no intention to possess the heavy equipment purportedly sold or leased to him. These documents included statements that the purchaser or lessee acknowledged receipt or possession of the covered machinery. Dorminey also admitted that he believed the financier would rely on these documents in deciding whether to provide funds that Dorminey, as *lessee* or *purchaser,* wanted to obtain. 1st Supp. Record, vol. 10, at 906, 932–36.[14] These funds normally would go to pay the *seller* of the machinery. Additional witnesses and evidence other than the wrongfully admitted bankruptcy testimony cast sufficient doubt on Dorminey's credibility to impeach him. The jury had overwhelming evidence to implicate Dorminey in the charged

---

**13.** 11 U.S.C. § 25(a)(10) provides:

[A]t the first meeting of his creditors, at the hearing upon objections, if any, to his discharge and at such other times as the court shall order, [the bankrupt shall] submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding, except such testimony as may be given

by him in the hearing upon objections to his discharge . . . .

11 U.S.C. § 702 (1976) makes § 25(a)(10) applicable to Chapter XI proceedings to the extent not inconsistent with the provisions of Chapter XI.

**14.** Dorminey contends that he did not read the contracts and that he did not know why the finance companies would lend the money without inspecting the machinery used as collateral. We, like the jury, find this difficult to believe. Dorminey was the majority shareholder of a bank at the time of these transactions and admitted that his bank would not advance such large amounts of money without a physical inspection. 1st Supp. Record, vol. 10, at 930–31.

crimes, and we therefore hold that the error in admitting the bankruptcy testimony was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

### E. *The Trial Court's Instructions to the Jury*

 Herring and Dorminey both challenge portions of the trial court's charge to the jury. Counsel for Herring, however, failed to make a timely objection to the court's instructions. Herring is thus precluded from asserting his challenge on appeal under Fed.R.Crim.P. 30 [15] unless we find plain error. After reviewing his contentions, we find no such error. Dorminey challenges the section of the court's charge stating that the subsequent repayment of funds obtained by fraud is not a legal defense to the charge of fraud. While admitting that this charge is technically correct, he claims that such a charge misled the jury by preventing it from considering repayment as a factor bearing on his intent concerning the contracts in question. We cannot say that the jury was misled by the trial court's instruction. The statute under which both defendants were convicted requires only "knowledge" that the checks transported in interstate commerce had been obtained by fraud, not any specific intent to defraud. Here ample evidence allowed the jury to find that the requisite knowledge was present.

Accordingly, we uphold the jury verdicts and the judgments of conviction.

AFFIRMED.

---

15. Fed.R.Crim.P. 30 provides in part:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.