**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Jesus JIMENEZ–DIAZ and Carlos Humberto Salazar, Defendants-Appellants.**

**No. 80–5176.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 19, 1981.

tions involved in a suit against the Federal Aviation Agency is jurisdictional.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Anthony F. Gonzalez, Richard A. Lazzara, Tampa, Fla., for Jimenez-Diaz.

Roy E. Black, Miami, Fla., for Salazar.

Manuel Menendez, Jr., Judy S. Rice, Asst. U. S. Attys., Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT, FAY and VANCE, Circuit Judges.

TJOFLAT, Circuit Judge:

Jesus Jimenez-Diaz and Carlos Salazar were convicted in the district court on a multi-count indictment charging the violation of several federal drug laws. They appeal, claiming that the trial judge committed reversible error in questioning a co-defendant in the presence of the jury about his plea of guilty to one of the charges for which Jimenez-Diaz and Salazar were on trial. Salazar claims, in addition, that the trial judge erred in denying his pre-trial motion for a continuance and in admitting in evidence a post-arrest statement Salazar made to the police, and that the cumulative effect of these and other errors was to deny him a fair trial. None of appellants' claims has merit, and we therefore affirm their convictions. We note, however, that the district court, in sentencing each appellant on count three of the indictment, the conspiracy charge, imposed a term of special parole. The Supreme Court, in *Bifulco v. United States*, 447 U.S. 381, 400, 100 S.Ct. 2247, 2259, 65 L.Ed.2d 205 (1980), has determined that special parole is not authorized by the conspiracy statute; therefore, upon receipt of our mandate, the district court shall strike the special parole term from appellants' sentences.

### I

James Hudson, the codefendant, pleaded guilty to count three of the indictment, which charged him, Jimenez-Diaz and Salazar with conspiring to import and to possess 384 pounds of cocaine with intent to distribute it. He subsequently received a grant of immunity and testified as a prosecution witness against Salazar and Jimenez-Diaz. Hudson provided the jury with a complete scenario of the cocaine smuggling operation that resulted in the indictment. According to Hudson, he met Salazar and a man named John on October 13, 1979, at an airport in Alberton, Georgia; the three men boarded a Cessna 414, and John flew it to an island in the Bahamas. There John left the group, and Hudson took over the controls and flew the plane to a remote airstrip in Colombia, South America. Upon land-

ing, Hudson and Salazar were met by several men, including Jimenez-Diaz, who refueled the airplane and loaded it with several pieces of luggage. Salazar, who spoke Spanish, directed these operations; Hudson neither spoke nor understood the language. When the plane was ready to depart, Salazar told Hudson that Jimenez-Diaz would accompany them on the return trip to the United States. Hudson protested; he felt the added weight of another passenger would make the takeoff too risky. Hudson relented, however, when Salazar explained that Jimenez-Diaz had to accompany the cargo.

Hudson flew the Cessna to Tampa, Florida, arriving in the early morning hours of October 14, 1979. When it landed at Tampa International Airport, the aircraft was seized by agents of the Drug Enforcement Administration and U.S. Customs, and its cargo of luggage was searched. The agents found 384 pounds of cocaine in the luggage; in a small purse they found Jimenez-Diaz's identification papers and the keys to the luggage, most of which had been locked. The agents read Hudson, Salazar and Jimenez-Diaz their *Miranda* rights (the latter two were given their rights in Spanish as well as English) and questioned them separately. Salazar made the only incriminating statement relevant to this appeal; if the agents could get him out of jail, he said, he would "do something better" for them in two weeks.

### II

On the prosecutor's direct examination Hudson readily admitted his involvement in the smuggling activity; the prosecutor did not ask him, however, about his plea of guilty to the conspiracy charge or the circumstances that led to his being given immunity. Counsel for Jimenez-Diaz opened the cross-examination and, like the prosecutor, chose not to inquire about Hudson's plea or immunity. Counsel's questioning was brief. First, he got Hudson to deny that he ever conspired with Jimenez-Diaz. Then, he established that Jimenez-Diaz did not comprehend English and that Hudson

was, therefore, unable to communicate with him. Finally, he planted the seed for his closing argument to the jury—that Hudson was smuggling an alien, Jimenez-Diaz—by getting Hudson to admit that he had previously smuggled aliens from Colombia to the United States.

Salazar's lawyer took a different approach. He focused on Hudson's credibility, attempting to establish that Hudson, not the defendants on trial, was the smuggler. His questioning created the impression that Hudson had bought his freedom by agreeing to testify for the government against Jimenez-Diaz and Salazar. The court, during a sidebar conference, admonished counsel for creating the impression that Hudson had gone "scot-free." The court told counsel that the jury was being misled and that the court would bring out Hudson's plea of guilty if counsel did not. Neither defense counsel voiced any objection to the admission of Hudson's guilty plea under the circumstances; they suggested, however, that the prosecutor, not the court, should be the one to develop the point.

Following this sidebar conference, Salazar's attorney continued on his tack that Hudson had managed to escape prosecution. He questioned Hudson about his post-arrest appearance before the magistrate; Hudson, in attempting to be responsive, volunteered that he had also appeared before the district court. At this point, the court intervened:

> THE COURT: All right. I think at this time to clarify the record, the witness having first twice referred to having been before me and it appearing that he is—was named as a defendant in this case, Mr. Witness, are you talking about the occasion of January 11th, that is a week ago today, when you appeared in this Court and pled guilty to the offense charged in Count Three of this indictment?
>
> THE WITNESS: Right. Right, sir.

Record, vol. III, at 208–209.

Salazar's attorney, resuming his cross-examination, established that Hudson was testifying under a grant of immunity. The court then addressed the jury:

> THE COURT: Now, ladies and gentlemen, [the grant of immunity] involves a question of Law and I will instruct you about that.
>
> As the witness has testified, the record indicates that the witness pled guilty to the offense charged in Count Three of the indictment in this case on January 11th, 1980, a week ago today.
>
> \*   \*   \*   \*   \*   \*
>
> You are entitled to consider all of that in weighing the weight and credibility to be given the testimony of Mr. Hudson. That is to say you are entitled to consider everything that you have heard him say on direct and cross examination.
>
> You are entitled to consider the fact that he has pled guilty to an offense charged in this Court. You are entitled to give consideration to the testimony he gave about the other events in which he has been involved and you are entitled to—to know that he testified—is testifying here today, after having been granted immunity from his testimony ever being used against him in some other Court.

*Id.,* at 211–214.

The appellants claim that two reversible errors were committed during this sequence of events: First, the court erred in admitting the evidence of Hudson's guilty plea because "its probative value [was] substantially outweighed by the danger of unfair prejudice," Fed.R.Evid. 403; second, the court should not have usurped the prosecutor's prerogative and questioned Hudson concerning the plea. We find no merit in these claims.

The fact that Hudson pleaded guilty to the conspiracy charge, and was testifying under a grant of immunity, was plainly relevant to Hudson's credibility; the only issue facing the trial judge was, therefore, whether, on balance, the prejudicial effect of this evidence required the court to exclude it. It may be that defense counsel waived any objection they might have had when, at the sidebar conference while Hudson was on the stand, they seemed to con-

cede the admissibility of the guilty plea by suggesting that it would be more appropriate for the prosecutor, rather than the trial judge, to introduce it. Later, after the court intervened and the plea was exposed, counsel did object on rule 403 grounds, and the government does not now contend that this objection was untimely. Under the circumstances, we will give counsel the benefit of the doubt and consider the issue.

■ To determine the admissibility of Hudson's plea we look to *United States v. King*, 505 F.2d 602, 608 (5th Cir. 1974), for guidance. There we set forth the factors to be considered in deciding whether evidence of a guilty plea of a codefendant was erroneously admitted. They are:

the presence or absence of a limiting instruction; whether there was a proper purpose in introducing the conviction or guilty plea of the codefendant; whether the plea or conviction was improperly emphasized or used as substantive evidence of guilt; whether the alleged error was invited by defense counsel; whether an objection was entered or an instruction requested; whether the failure to object could have been the result of tactical considerations; and whether, in light of all the evidence, the error was harmless beyond a reasonable doubt.

*United States v. Miranda*, 593 F.2d 590, 594 (5th Cir. 1979). Applying these factors, we conclude that Hudson's guilty plea was admissible.

■ First, we observe that defense counsel themselves invited the court to intervene as it did. During the sidebar conference that immediately preceded this intervention, Salazar's attorney indicated that he was going to persist in his efforts to create the impression that Hudson was perjuring himself to escape prosecution; Jimenez-Diaz's attorney urged him on. Both attorneys knew this strategy would prompt the court to clear the air. When the court subsequently acted, its sole purpose was to remove the utter confusion defense counsel had created regarding Hudson's status as a potential prosecution target and to eliminate any notion that he had gone scot-free.

The manner in which the court corrected the record on this point and instructed the jury as to how it was to treat the evidence of Hudson's plea did not, in our view, render the evidence so prejudicial as to require its exclusion under rule 403. We also note that the prosecutor made no impermissible use of the plea in his closing summation to the jury; he simply used the evidence as part of his argument that Hudson's testimony was worthy of belief and should be accorded significant weight. In sum, it was not error for the jury to learn of Hudson's true status under the law.

We turn next to appellants' contention that it was beyond the province of the court to elicit the evidence of Hudson's guilty plea. Fed.R.Evid. 614(b) authorizes a trial judge to "interrogate witnesses, whether called by [himself] or by a party." We recently expounded on this authority in these words:

"Following our common law heritage, a judge is not a mere moderator, and he has an obligation and duty to question witnesses and comment on the evidence when necessary. [citations omitted]. In fact a trial judge may elicit facts not yet adduced or clarify those previously presented and he may maintain the pace of the trial by interrupting and curtailing counsel's examination as a matter of discretion. *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979); *United States v. Hill*, 496 F.2d 201, 202 (5th Cir. 1974); *Kyle v. United States*, 402 F.2d 443, 444 (5th Cir. 1968).

Only when the judge's conduct strays from neutrality is a defendant thereby denied a fair trial as required by the Constitution. *See United States v. Middlebrooks*, 618 F.2d 273, 277 (5th Cir. 1980); *United States v. Daniels*, 572 F.2d 535, 541 (5th Cir. 1978)."

*United States v. Bartlett*, 633 F.2d 1184, 1188 (5th Cir. 1981), *cert. denied*, 50 U.S. L.W. 3225 (U.S. Oct. 6, 1981) (No. 80–1799).

■ In this case, the trial judge did not stray from neutrality when he questioned Hudson. Rather, his interrogation was a proper response to a trial strategy that

doubtless left the jury confused. Far from becoming an advocate, the judge merely attempted to eliminate confusion and, in our view, his action was essential to a fair presentation of the case.

### III

#### A.

Salazar claims that he was denied a fair trial when the district judge denied his attorney's request to postpone the trial. The case was originally scheduled for trial on January 14, 1980. On that day, Salazar appeared and told the court he was dissatisfied with his privately retained counsel. He explained that he had not known until he arrived at the courthouse that morning that he was to be tried that day; he thought he was there for a "hearing." He also said that he had had only a single ten-minute interview with his attorney about the case. The court was satisfied that Salazar had not contrived to force delay and gave him until 1:30 that afternoon to hire a new lawyer.

Salazar found one, and the court continued the trial for three days. It ordered Salazar's first lawyer to confer with the new attorney and to be present in the courtroom for consultation with the defense during the trial. The court also ordered the prosecutor to give counsel the full benefit of the discovery orders previously entered in the case; consequently, counsel had access to the proof the government planned to introduce at trial. Counsel also conferred at length with the attorneys representing Jimenez-Diaz. Despite this, Salazar moved for a further postponement of the trial. His motion was denied.

■ A motion for a continuance falls within the sound discretion of the trial court, and its denial of such a motion should not be disturbed absent abuse of discretion. *United States v. Cross,* 638 F.2d 1375, 1378 (5th Cir. 1981); *United States v. Houde,* 596 F.2d 696, 701 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *United States v. Siegel,* 587 F.2d 721 (1979). To establish abuse of discretion, the appellant must show that the denial of the motion seriously prejudiced him. *United States v. Cross,* 638 F.2d at 1378; *United States v. Houde,* 596 F.2d at 701; *United States v. Miller,* 513 F.2d 791, 793 (5th Cir. 1975).

■ Although we recognize that Salazar's substitute counsel had a short time to prepare for trial, counsel, in urging the trial judge to grant a postponement, failed to point out how the early trial date would prejudice his client at trial. Counsel proceeded to represent Salazar quite vigorously; he cross-examined each government witness, made appropriate objections and provided an imaginative and thorough closing argument. We are unable to discern any prejudice. Salazar claims none in his briefs and pointed to none during the oral argument of this appeal.[1] There is no basis to conclude that the district court abused its discretion in denying Salazar's motion for a continuance.

#### B.

Salazar claims that the district court erred in refusing to suppress his post-arrest statement to the federal agents that he could do something better for them in two weeks if they let him out of jail. Record, vol. II at 240–241, vol. IV at 180. Salazar contends that the statement was involuntary and, moreover, that it was part of a plea negotiation cognizable under Fed.R. Crim.P. 11.

Salazar was interviewed intermittently by several agents while he was detained at the Tampa International Airport following his arrest. He admits that when the first interview began, the agents asked for his

---

1. Salazar's counsel conceded in argument that no defense witnesses would have been called. Counsel did say that he would have examined Hudson regarding two previous arrests for smuggling contraband aboard his airplane; on each occasion Hudson accused the passengers of transporting the substances without his knowledge. The record reveals, however, that counsel questioned Hudson regarding these very instances, using transcripts of Hudson's testimony at his bail hearing to refresh his memory. Record, vol. III at 184–185; 198–201.

cooperation but plainly told him that they could not guarantee anything. Record, vol. II at 239–240. His argument is that the agents who conducted the subsequent interviews failed to disclaim any ability to make promises; *a fortiori*, the agents obtained his statement either involuntarily or in a Rule 11 plea negotiation.

Salazar concedes that an investigating agent's promise to make the accused's cooperation known to the prosecuting attorney coupled with a disclaimer that the agent can make no binding promise is an insufficient inducement to render the accused's statement involuntary. Brief of Appellant Salazar at 43. *See United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978), *United States v. Frazier*, 434 F.2d 994, 996 (5th Cir. 1970). Salazar argues, however, that the interrogator must make a disclaimer each time he attempts to gain information from the accused. Because the agents failed to make a disclaimer immediately prior to taking his incriminating statement, Salazar asserts that the statement was rendered involuntary. *See Bram v. United States*, 168 U.S. 532, 543, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

■ The district court found that Salazar knew, when he made his statement, that the agents could not promise anything and that his statement was made voluntarily after a full administration of his *Miranda* rights in Spanish and English. Record, vol. II at 267–269. We must accept these findings as true because we cannot say that they are clearly erroneous. *United States v. Turner*, 628 F.2d 461, 465 (5th Cir. 1980).

■ As for Salazar's contention that his statement was part of a plea negotiation and therefore inadmissible under Fed.R.Crim.P. 11 and Fed.R.Evid. 410, we note that these rules apply only to statements made in the course of plea negotiations, i. e., " 'discussions [that take place] in advance of the time for pleading with a view to an agreement whereby the defendant will enter a plea in the hope of receiving certain charge or sentence concessions.' " *United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir. 1978) *quoting*, ABA Project on

Minimum Standards for Criminal Justice of Pleas of Guilty, Introduction at 3 (Approved Draft 1968). Salazar was not contemplating a plea to criminal charges; he simply wanted his freedom. True, Salazar was seeking a deal, but the deal did not involve a plea. *United States v. Robertson*, 582 F.2d at 1365–68.

### C.

Salazar's final claim is that he was denied a fair trial. He contends that five errors combined to produce this result.

We have disposed of the first two, the court's denial of Salazar's motion for a continuance and its interrogation of Hudson concerning his guilty plea, finding them to lack merit. We thus turn to the three remaining claims of error; they also lack merit, standing alone and in combination.

■ During the jury selection, the trial judge conducted the *voir dire*. Salazar faults the judge's dismissal of two prospective jurors, who were sympathetic to Salazar, and his refusal to excuse two others whom Salazar challenged for cause. The first two jurors said that they could not serve fairly and impartially; their disqualification, therefore, cannot seriously be questioned. *United States v. Delval*, 600 F.2d 1098, 1101 (5th Cir. 1979). Those whom Salazar challenged for cause had been exposed to pretrial publicity, but the judge refused to dismiss them because he was satisfied that they could lay aside their impressions and opinions and render a verdict based on evidence presented in court. *United States v. Davis*, 583 F.2d 190, 197 (5th Cir. 1978). *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1960). The court acted well within its discretion in accepting these jurors.

■ Salazar claims that the court improperly limited his right to cross-examine Hudson. We have reviewed each instance Salazar has cited and find no signs of prejudice. *United States v. Bartlett*, 633 F.2d at 1188.

Salazar's final objection is that the court repeatedly interrupted his closing argument, thereby limiting its effectiveness. The court interrupted Salazar's lawyer twice. When counsel implied that one of the government agents had been improperly allowed to sit in the courtroom, the court informed the jury of the government's right as a matter of law to have an agent present during the proceedings. When counsel voiced his personal opinion about an agent's conduct, the court simply cautioned him, quite appropriately, to confine his argument to conclusions he wished the jury to draw from the evidence. *See United States v. Rodriguez,* 585 F.2d 1234, 1243 (5th Cir. 1978), *cert. denied sub nom. Albernaz v. United States,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). In both instances, the court acted within its discretion. *See United States v. Breedlove,* 576 F.2d 57 (5th Cir. 1978).

The convictions of the appellants are AFFIRMED; the district court, on receipt of this mandate, is instructed to strike the special parole term incorporated in the sentence imposed on count three of the indictment.

AFFIRMED, with instructions.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.