United States Court of Appeals
Fifth Circuit

**F I L E D**

November 1, 1999

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

**No. 97-41505**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**DAGOBERTO RODRIGUEZ, RENE RODRIQUEZ and RICARDO BLANCO,**

**Defendants-Appellants.**

---

Appeals from the United States District Court
for the Southern District of Texas
(M-97-CR-125-1)

---

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Dagoberto Rodriguez ("Dagoberto"), Rene Rodriguez ("Rene"), and Ricardo Blanco ("Blanco") (collectively "Appellants") were convicted of conspiracy to possess marijuana. In addition, both Rodriguez brothers were found guilty of possession of more than 100 kilograms of marijuana. On appeal, Appellants challenge the district court's allegedly excessive and prejudicial intervention in the questioning of witnesses. Finding no plain error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

On January 6, 1997, Narciso Leo Reyes ("Reyes") was asked by the Rodriguez brothers to dig two holes on their ranch. A few days later on January 12, 1997, after the holes had been filled in, Reyes investigated those holes and unearthed several bundles of marijuana. He recovered one of those bundles and allowed his companion, who had driven him to the ranch, to take a portion of it. Reyes then returned to town, where he futilely attempted to sell the marijuana. After these unsuccessful efforts, Reyes returned to the ranch and reburied the opened bundle. The next day, unbeknownst to Reyes and the Rodriguez brothers, federal and Texas agents executed a search warrant on the ranch and seized all the marijuana in the two holes. A search warrant was reportedly posted on the property.

That same day, the Rodriguez brothers called Reyes to ask if he had been out to the ranch. Fearing that they were inquiring about the marijuana taken by his companion, Reyes denied having been at the location. For several weeks, Reyes continued to avoid the Rodriguez brothers' frequent attempts to speak with him. But on the evening of February 10, Blanco and two individuals struck Reyes in the back of the neck with a baseball bat and threw him into a car trunk as he was returning home. They then transported Reyes to a place near Rene's house. There, both Rodriguez brothers questioned Reyes about the marijuana while Dagoberto and Blanco punched and kicked him.

2

Afterwards, Reyes was taken to the garage at the house of Blanco's mother in La Feria, where Blanco continued to beat and to interrogate Reyes about the marijuana. At one point, Blanco tied Reyes to a bunk-bed ladder with duct tape and poured gasoline on Reyes's bare feet and set them on fire. The following morning, Reyes managed to escape and make his way to a nearby schoolyard, from which he was taken to a hospital for treatment of his numerous injuries, including his blistered and blackened feet. Noticeably, he still had duct tape around his head. Later that day, police officers searching Blanco's mother's garage found duct tape on a bunk-bed ladder, hair on other pieces of used duct tape, and a gasoline can.

At trial, Blanco gave a different account of the events of February 10-11. He said that he was at his mother's house, drinking beer leftover from his twenty-first birthday party that weekend, when Reyes was dropped off by someone driving a red car. Blanco testified that Reyes was obviously high or drunk, as he was barefoot on a cold night, and asking for money and information about where he could buy some drugs. Reyes said that he could pay Blanco back because he had some marijuana that he would be able to sell. Blanco, however, refused to lend Reyes any money because Reyes still owed him money for a gold bracelet that Reyes had bought from him in a bar two months before. Blanco claimed that this argument over money escalated into a fistfight, that Blanco knocked Reyes out, and that Blanco dragged Reyes into the garage and taped his feet to a ladder to keep him from waking up and

3

breaking the windows in Blanco's mother's house. Blanco said he inadvertently knocked over a gas can in this process, but mentioned nothing about a fire. Later that night, Blanco removed the tape on Reyes's feet and covered him with a blanket to let him "sleep it off." The next morning, when Blanco awoke and went to the garage, he saw that Reyes was gone. Thereafter, Blanco called his wife to say he had spent the night at his mother's house and was coming home. A few days after hearing that a warrant was out for his arrest, Blanco turned himself in, giving a statement that his trial testimony mirrored.

Despite the conflicting testimony and the limited physical evidence, the jury found Blanco and the Rodriguez brothers guilty of the crimes charged. This appeal followed.

## II.

Relying primarily on our decision in *United States v. Saenz*, 134 F.3d 697 (5th Cir. 1998), Appellants argue that the district court's frequent and extensive questioning of Reyes and the defense witnesses prejudiced the jury against them. Because Appellants failed to object at trial, we review the district court's questioning for plain error. *See United States v. Cantu*, 167 F.3d 198, 202 (5th Cir.), *cert. denied*, 68 U.S.L.W. 3200 (U.S. Oct. 4, 1999) (No. 98-1928). Plain error exists only if "the district judge's actions, viewed as a whole, ... amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor."

*Bermea*, 30 F.3d at 1569.  We must "review the entire record" to determine whether the district court's interventions were "'so prejudicial'" as to deny the defendants "'a fair, as opposed to a perfect, trial.'"  *Cantu*, 167 F.3d at 202 (quoting *Bermea*, 30 F.3d at 1569).

A careful examination of the entire record convinces us that the district court's questions were not so prejudicial as to conflate the roles of judge and prosecutor or to deny Appellants a fair trial.  The district court asked extensive questions of Reyes, the lead government witness, and of Blanco, the only defendant who testified.[2]  But many of those interruptions were due to the government's and the defense counsel's inability to lay a proper foundation for certain testimony, or those interruptions served to clear up potentially confusing testimony.  *See United States v. Bartlett*, 633 F.2d 1184, 1188 (5th Cir. Jan. 1981) ("[A] trial judge may elicit facts not yet adduced or clarify those previously presented . . . .").  Although in the case of a testifying defendant "this Court is particularly sensitive to a trial judge's questioning," *United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir. 1985), we conclude that the district court did not sufficiently impugn Blanco's credibility to prejudice the jury. Where a defendant, as in this case, gave plainly inconsistent

---

[2]     Appellants also complain of the district court's questioning of two defense witnesses: a Mexican newspaper photographer and Pedro Martinez III, a neighbor of Blanco's mother.  The former testified to a collateral matter while, in the case of Martinez, the court merely exercised its discretion to elicit testimony from him.  Appellants fail to allege how such questioning strayed from the lines of judicial impartiality.

answers, misunderstood several questions, and ultimately was shown to have a different assumption about what constituted legal divorce than the judge, the district court had an obligation and a duty to question the defendant and did not depart from the bounds of neutrality in its attempts to elucidate the evidence. *See Bartlett*, 633 F.2d at 1188. Indeed, the district court's questions fell within the scope of its authority to clarify the evidence, determine admissibility, and explore the possibility of Blanco's perjury about his marital status. Unlike *Saenz*, the district court's questions did not make the government's case for it or anticipate testimony on elements of the offenses.

Based on a review of the entire record, including the two instructions to the jury to disregard anything the judge said about the facts, we find that the judge's questioning did not lead the jury to a "predisposition of guilt" and that the district court committed no plain error.

## III.

Appellants raise several other issues relating to the sufficiency of the evidence to convict Rene and Blanco and to all Appellants' sentences. These are meritless. Accordingly, Appellants' convictions and sentences are **AFFIRMED**.

6